FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO.

JERRY WOJCIK, an individual, on
behalf of himself and all others similarly situated,

Plaintiff,

8:12-cv-2414 23-TBM

v.  **COMPLAINT - CLASS ACTION**

BUFFALO BILLS, INC.,
a New York Corporation,

Defendant.
_____/

### CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*, THE TELEPHONE CONSUMER PROTECTION ACT
### JURY DEMAND

1. "Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, Slip Opinion, Case No. 10-1195 (United States Supreme Court January 18, 2012) (internal citations omitted). In an effort to enforce this fundamental federal right to privacy, Plaintiff files the instant class

action complaint alleging violations of 47 U.S.C § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA").

Defendant has sent out thousands of unlawful text messages in violation of the TCPA. By effectuating these unauthorized text message calls (also known as "SMS Messages"), Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

In order to redress these injuries, Plaintiff, on behalf of himself and the proposed class of similarly situated individuals, brings this suit under the TCPA, which specifically prohibits unsolicited voice and text calls to cell phones. Defendant has sent unwanted text messages in a manner which violates the right of privacy of the putative class members. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all unlawful text messages and an award of statutory damages to the class members, together with costs and reasonable attorney's fees.

All allegations contained herein are based upon information and belief of Plaintiff or the investigative efforts of the undersigned counsel:

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 42 U.S.C. § 227. Venue in this District is proper because Plaintiff resides here and Defendant sends text messages to individuals residing in this District. This Court also has jurisdiction over Plaintiff's individual claim pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 227.

## PARTIES

3. Plaintiff, JERRY WOJCIK ("Plaintiff" or "MR. WOJCIK"), is a natural person, and citizen of the State of Florida, residing in Pinellas County, Florida. Plaintiff had previously resided in the Western New York area from birth (1976) until he moved to Tampa Bay in 2001.

4. Defendant, BUFFALO BILLS, INC., is a New York Corporation, which owns the Buffalo Bills professional football team (nicknamed "the Bills"). The Bills became members of the National Football League in 1970 and, as of the filing of the instant lawsuit, are currently tied for second place in the American Football Conference – Eastern Division. The Buffalo Bills are known to have one of the most dedicated fan bases in the National Football League. This has financially sustained the team even though they are in a much smaller commercial market compared to other professional football teams. According to Forbes

magazine, the Buffalo Bills football franchise is worth approximately $792 million dollars.[1]

## A BRIEF OVERVIEW OF TEXT MESSAGING

5. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

6. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

7. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

8. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service

---

[1] Source: http://www.forbes.com/pictures/mli45ikdf/42-buffalo-bills-2/ (last accessed October 23, 2012)

providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

9. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

10. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

12. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 FCC Rcd at 565 (¶ 10).

13. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

14. "Mobile alerts" are recurring programs in which text messages are sent *en masse* automatically to persons within a subscribed database. A consumer specifies the content which he or she wishes to receive within the parameters set by either the consumer or the content provider.

15. One of the leading think tanks, Pew Research Center, recently reported that 79% percent of cellular telephone owners use text messaging; of this group, 69% percent receive unwanted text message spam, 25% percent on a weekly basis. Source: http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last accessed November 18, 2012).

### FACTUAL ALLEGATIONS SPECIFIC TO MR. WOJCIK

16. On or about September 12, 2012, Plaintiff visited the Buffalo Bills website in an effort to keep track of news affecting the Buffalo Bills. There he read an advertisement that stated that he could electronically subscribe through his

cellular telephone to receive mobile text message alerts from the Buffalo Bills by texting the word "BILLS" to short code 64621.

17. The express written language which governs the Buffalo Bills mobile text message alerts program for all subscribers is posted on the Buffalo Bills website and reads as follows:

> Bills Text Alerts, Powered by Verizon Wireless
>
> Get up to the minute news and team alerts sent directly to your phone! *Standard message rates apply*
>
> To opt in text BILLS to 64621
>
> Verizon Wireless Text Alerts. Message and Data Rates May Apply. You will be opted in to receive 3-5 messages per week for a period of 12 months. Text **STOP** to cancel. Text **HELP** for help. Service availability is on a carrier by carrier basis and based on handset compatibility.
>
> Terms & Conditions and Privacy Policy available **here.**

Source: http://www.buffalobills.com/news/text-alerts.html (last accessed October 23, 2012) (emphasis in original)

18. The relevant terms and conditions which govern the Buffalo Bills mobile text message alerts program for all subscribers restates the following:

**BILLS TEXT ALERTS**

```
Terms & Conditions of Bills Text Alerts,
Powered by Verizon Wireless:

To opt in, text BILLS to 64621

Get up to the minute news and team alerts sent
directly to your phone! You will be opted in to
receive 3-5 messages per week for a period of
12 months. Msg&data rates may apply, Text HELP
for help. Text STOP to cancel. Contact the
guest service department at 1-877-BB-TICKS with
issues.
```

Source: http://www.buffalobills.com/about-us/privacy-policy.html#text-alerts (last accessed October 23, 2012)

19. After subscribing to receive the aforesaid text message alerts, the Buffalo Bills texted back a confirmatory message which read as follows:

```
Thanks for joining BILLS alerts, you will
receive up to 5msgs/week. U r also entered 2win
tix & merch! Text STOP 2quit, HELP 4help.
Msg&data rates may apply.
```

20. The Buffalo Bills website, terms and conditions, and confirmatory text message all unequivocally state that the subscribers consent to and will be limited to the receipt of no more than five (5) text messages during any one week period.

8

21. In his second full week after joining, MR. WOJCIK received exactly six (6) text messages from Buffalo Bills between the dates of September 23, 2012 – September 29, 2012. Plaintiff received messages on September 23 (3 messages), September 25 (2 messages), and September 28 (1 message). All text messages were sent from short code 64621.

22. Several weeks later, MR. WOJCIK received exactly seven (7) text messages from the Buffalo Bills between the dates of October 14, 2012 – October 20, 2012. Plaintiff received messages on October 14 (2 messages), October 15 (2 messages), October 16 (1 message), October 17 (1 message), and October 19 (1 message). All text messages were sent from short code 64621.

23. According to the Buffalo Bills profile page on the Facebook website, there are more than 400,000 people who "like" the Buffalo Bills; similarly, according to the Buffalo Bills profile page on the Twitter website, the Buffalo Bills are more than 100,000 followers. Both websites have been utilized to promote the Buffalo Bills text message alerts service, which is the subject of the instant lawsuit.

24. Upon information and belief, all member of the putative class received more than five (5) text messages per week. The messages at issue were sent to said members *en masse* using an automatic telephone dialing system, also known as an "auto-dialer"; the auto-dialer used by Defendant had the capacity to

9

store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

## CLASS ACTION ALLEGATIONS

25. This action is brought on behalf of a class consisting of all persons in the United States who subscribed to receive Buffalo Bills text message alerts from short code 64621 and were subsequently sent more than five (5) text messages during any one week period from Defendant or by another party on behalf of Defendant to their cellular telephone wherein said text messages were sent using an automatic telephone dialing system or a device which has the capacity to be used as same during the four year period prior to the filing of the complaint in this action through the date of certification.[2]

The above-cited class definition excludes all entrants who were previously subscribed to receive multiple alerts from short code 64621. Excluded from the Class are Defendant, their legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest. Also excluded from the Class is the Judge to whom this case is assigned as well as the Judge's immediate family. Plaintiff reserves the right to amend the above-stated Class definition based upon facts learned in discovery.

---

[2] The members of the putative class may be referred to herein as "the Class."

26. Plaintiff alleges on information and belief based upon the Defendant's use of mass text messages that the class is so numerous that joinder of all members of the class is impractical. There are more than forty-one (41) individuals in the Class as previously defined herein.

27. There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members. The common factual and/or legal issues common to each class member are as follows:

    (a) Whether Defendant's conduct is governed by the TCPA?

    (b) Whether the mobile spam sent by Defendant violated the TCPA?

    (c) Are the class members entitled to treble damages based upon the willfulness of Defendant's conduct?

    (d) Whether Defendant should be enjoined from engaging in such conduct in the future?

28. Plaintiff's claim is typical of those of the class members. All claims are based on the same facts and legal theories.

29. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful

practices under the TCPA and class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

30. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

> (1) The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.
>
> (2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

31. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate relief with respect to the class as a whole.

32. MR. WOJCIK requests certification of a hybrid class under Rule 23(b)(3), Federal Rules of Civil Procedure, for monetary damages and pursuant to Rule 23(b)(2) for injunctive relief.

## COUNT I
## NEGLIGENT VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

33. Plaintiff incorporates Paragraphs 1 through 32.

34. Defendant sent an excess of five (5) text messages per week to the Bills text message alerts subscribers members (i.e. members of the class) using an automatic telephone dialing system.

35. The excessive calls (i.e. more than five (5) text messages sent during a one week period) were made without the prior express consent of the parties.

36. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

    (a) An order certifying this case to proceed as a class action;

    (b) Statutory damages at $500 dollars per call for negligent violations of the TCPA;

    (c) An injunction requiring Defendant to cease all communications in violation of the TCPA;

    (d) Reasonable attorney's fees and costs; and

    (e) Such further relief as this Court may deem appropriate.

## COUNT II
## WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

37. Plaintiff incorporates Paragraphs 1 through 32.

38. Defendant sent an excess of five (5) text messages per week to the Bills text message alerts subscribers members (i.e. members of the class) using an automatic telephone dialing system.

39. The excessive calls (i.e. more than five (5) text messages sent during a one week period) were made without the prior express consent of the parties.

40. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages of up to $1500 dollars per call for each willful violation of the TCPA;

(c) An injunction requiring Defendant to cease all communications in violation of the TCPA;

(d) Reasonable attorney's fees and costs; and

(e) Such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated this 24th day of October 2012.

Respectfully submitted,

By: /s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651

SCOTT D. OWENS, ESQ.
*Attorney for Plaintiff*
664 E. Hallandale Beach Blvd.
Hallandale, FL 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com


JAMES S. GIARDINA, ESQ.
Florida Bar No. 942421
*Co-counsel for Plaintiff*
The Consumer Rights Law Group, PLLC
3104 West Waters Avenue, Suite 200
Tampa, Florida 33614
Direct: (813) 413-5610
Fax: (866) 535-7199
James@ConsumerRightsLawGroup.com