**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

_____

JERRY WOJCIK, an individual, on behalf of
himself and all others similarly situated,

      Plaintiff,

v.                                        Case No. 8:12-cv-02414-SDM-TBM

BUFFALO BILLS, INC.,
a New York corporation,

      Defendant.

_____

**JOINT MOTION AND MEMORANDUM IN SUPPORT OF**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

This proposed class action settlement concerns allegations that Defendant, Buffalo Bills, Inc. (BBI), transmitted excessive text message advertisements to the wireless phones of consumers in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). Plaintiff alleged that when consumers signed up to receive text messages from BBI, there was a limit to how many texts BBI could send in any given week. BBI denies these allegations and claims text messages were only sent to subscribers who elected to receive such text messages.

Although the litigation was hard-fought and often times contentious, the Parties continuously discussed the prospect of settling this case, including engaging in a series of formal settlement discussions beginning in April 10, 2013 which culminated in this proposed settlement. It was not until after defendant's dispositive motion was fully briefed, the class motion was fully briefed, including declarations by experts for both parties and completion of various discovery

including depositions of plaintiff, corporate representatives of BBI and third party discovery that this proposed settlement was reached.

Through additional negotiations over the specific terms of the agreement, Plaintiff and BBI were able to reach a settlement. A true and accurate copy of the Stipulation of Settlement ("Stipulation") is attached hereto as *Appendix 1*.

Under the Stipulation, BBI has agreed to provide each class member who submits a valid claim with a BBI Debit Card that is fully transferrable and does not require any minimum purchase that can be used at the official Bills online store or in in person at the official Bills team store on the grounds of Ralph Wilson Stadium.    The estimated potential total class value of the BBI debit cards equals $2,487,745.00.  The class relief is particularly appropriate as the putative class consists of BBI fans.  As of the date of this motion, BBI has terminated the Text Service, but agrees as part of the settlement that should it ever recommence operation of a text messaging service, it shall implement safeguards to ensure that it complies with any express limitations it places on the number of text messages transmitted.

In addition, BBI shall separately pay for the costs of notice, administrative expenses, incentive awards and attorneys' fees. It is important to note that the incentive award and attorney fees were not resolved until after agreement was reached on the relief to the class.  In fact, the parties were set to present the issue of attorney fees to the Court as documented in the Mediation Report filed on November 4, 2013.   **[DE 66]**.   Subsequently after additional mediation discussions, both parties agreed to the amount of attorney fees and costs (subject to court approval).

All told, this settlement provides the class with a significant portion of the statutory

2

damages made available under the TCPA, and, given the hurdles facing Plaintiff in this litigation, the results achieved are well beyond those required to preliminarily approve the settlement. As shown below, other federal courts have approved similar settlements.

Plaintiff therefore moves the Court to: (a) preliminarily approve the instant settlement; (b) certify the settlement class; (c) approve the manner and form of notice to the class; (d) appoint plaintiff as class representative and (d) appoint Scott D. Owens of Scott Owens, P.A., James Giardina of The Consumer Rights Law Group, and Keith Keogh of Keogh Law, LTD as Class Counsel.

## II. NATURE OF THE LITIGATION

### A. Plaintiff's Allegations

On October 25, 2012, Plaintiff, Jerry Wojcik, commenced this putative class action lawsuit against Defendant, BBI, by filing a Complaint in the United States District Court for the Middle District of Florida, Case No. 8:12 CV 2414-SSDM-TBM, alleging that BBI violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,* ("TCPA") by sending text messages to Plaintiff Wojcik and others similarly situated, without their prior express consent.

Central to the allegations in the Complaint were that BBI offered a text alert service whereby subscribers could receive "up to the minute news and team alerts" sent directly to their cellular telephone.  Integral to that service were terms and conditions which purported to limit the messages in a given week to 3-5, for a period of 12 months. Plaintiff's Complaint alleges that BBI exceeded the terms and conditions of its text alert service by routinely sending more than 5 messages per week, in violation of the TCPA. The proposed Stipulation, while resulting in

dismissal of the entire action[1], settles the claims of class members who received more than 5 text messages from BBI's text alert service in a given week.

**B. Litigation, Investigation, & Settlement**

This litigation was hard fought from the outset. After the original Complaint was filed, BBI moved for dismissal of Plaintiff's claims and for Summary Judgment. **[DE 6]**. After briefing the motion to dismiss and filing their case management report, the Parties were ordered to mediation, which began on April 10, 2013. **[DE 22]**. Discovery ensued on or about December 21, 2012, which resulted in Plaintiff's filing of a motion to compel discovery responses **[DE 23]**, Defendant's memorandum in opposition of same **[DE 25]**, and the Parties joint motion for protective order. **[DE 26]**. The Parties' ongoing discovery disputes required a hearing before Magistrate Judge Thomas B. McCoun III on April 5, 2013. **[DE 35]**.  Subsequent attempts to depose third-party witness, Charley Cassell, were met with strenuous opposition. **[DE 40]**. Party depositions were ultimately conducted after resolution of a Motion to Quash filed in the Northern District of Illinois[2].

Plaintiff's motion for class certification was filed on June 17, 2013. **[DE 53]** and both sides submitted declarations of experts to support their respective positions. Even after the Parties announced a tentative settlement, BBI filed its motion for summary judgment. **[DE 64]**. At that point, the Parties were ordered to confer once again with the mediator, who was directed to file a report by November 4, 2013. **[DE 65]**. Upon receipt of the mediator's report, notifying the Court of the Parties' tentative settlement, this Court issued an Order staying all deadlines,

---

[1]  The parties' proposed final judgment and order of dismissal is attached hereto as Exhibit A.

[2] Case number 1:13-cv-01251

denying all outstanding motions as moot, and instructing the parties to propose a schedule of deadlines. **[DE 67]**. Consistent with the Parties' proposed Order, this Court ordered the filing of the instant motion and memorandum, on or before January 15, 2014.

**C. Defendants' Position**

Defendant BBI has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that it committed, threatened, or attempted to commit, any wrongful act or violation of law or duty as alleged in the Action. BBI also maintains that it acted properly in all respects in the preparation and sending of text messages to the putative members of the alleged class, and that its actions were not in violation of the TCPA.

## III. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement follow:

**A. Class Definition.** The settlement class is defined as follows:

> Persons in the United States and its territories who, during the Class Period, subscribed to the Text Service by texting the word "BILLS" from their cellular telephone to SMS short code 64621 in order to receive SMS text message alerts from Defendant and who received text messages from Defendant within a Weekly period during the Class Period where the number of text messages sent as part of the Text Service exceeded five (5) text messages in that Weekly period. Excluded from the Class are any entities in which defendant has a controlling interest, counsel for the parties or defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

**B. Individual Class Member Benefits.** A Settlement Class Member who properly and timely submits a Claim Form for an Approved Claim shall be entitled to receive a BBI Debit Card for purchases of merchandise available for sale at (i) Defendant BBI's online retail store at www.shopthebills.com and (ii) in person at the official Buffalo Bills team store located on the

grounds of Ralph Wilson Stadium, One Bills Drive, Orchard Park, NY, subject to the following terms and conditions:

    i.  Each BBI Debit Card shall be redeemable up to its face value for merchandise purchases (exclusive of any and all shipping costs and taxes that may apply) with no minimum purchase at  (a) "The Bills Store", BBI's official online retail store at www.shopthebills.com;  and (b) in person at the official Buffalo Bills team store located on the grounds of Ralph Wilson Stadium, One Bills Drive, Orchard Park, NY;

    ii.  Each BBI Debit card shall be fully transferable, without limitation, and shall expire  a period of forty-eight (48) months from the date of issuance

    iii.  BBI Debit Cards shall not be redeemable for cash;

    iv.  Each eligible Settlement Class Member submitting an Approved Claim(s) shall be entitled to receive no more than one (1) BBI Debit Card as part of this Settlement Agreement.

  **b.**  BBI Debit Cards shall be issued in the following values:

    i.  $57.50 for each Approved Claim of a Settlement Class Member in Tier 1;

    ii.  $65.00 for each Approved Claim of a Settlement Class Member in Tier 2; or

    iii.  $75.00 for each Approved Claim of a Settlement Class Member in Tier 3.

**C. Group Relief and Additional Relief.** In addition to the individual relief to the settlement class provided above, BBI has agreed to provide the following group and other relief.

    **1. Safeguard as to Future Text Messaging.**  As of the date of this motion, BBI has terminated the Text Service, but agrees as part of the settlement that should it ever recommence

the operation of a text messaging service, it shall implement safeguards to ensure that it complies with any express limitations it places on the number of text messages transmitted to an individual Telephone Number.  The foregoing safeguards shall not act in any way act as a limitation or restriction on the right of Defendant, in its sole discretion, to later modify the terms and conditions of such recommenced text service and/or to again discontinue the such text service at any subsequent time after recommencement.

 **2. Payment of Notice and Administrative Fees:** The cost of the Notice Plan, including but not limited to establishment and maintenance of the Settlement Website, and the costs of publication are Settlement Administration Expenses and shall be borne solely by BBI.

 **3. Compensation for the Class Representative:** Subject to Court approval, Plaintiff Wojcik shall, in addition to any recovery that he is entitled to as a Settlement Class Member, be awarded an incentive award in the amount of $5,000.00 (the "Incentive Award"). BBI shall not object to, or otherwise challenge, directly or indirectly, Class Counsel's application for an Incentive Award if limited to such amount.

 **4. Payment of Attorneys' Fees:** Under the Stipulation, the Parties have agreed that BBI shall pay to Class Counsel the sum of $562,500.00 in attorneys' fees and costs associated with the Action.  As noted above, both parties agreed to the amount of attorney fees and costs after the class relief was resolved.

**D. Release.** In exchange for the relief described above, the release is applicable to all class members and releases any and all claims as more fully set forth in the Settlement Agreement resulting/arising from BBI's transmission of Contested Text Messages (as defined in the Settlement Agreement) as part of the Text Service.. The full scope of the release, and its exact

terms, is fully set forth at paragraphs 1.3 and 1.34 of the Parties' class action Settlement Agreement, attached hereto as *Appendix 1*. (Effective as of January 14, 2014)

### IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a class action settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (internal quotations omitted).

The Court may certify a class when the plaintiff demonstrates that the proposed class and proposed class representatives meet these prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4) (2007); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). After meeting the strictures of Rule 23(a), the plaintiff must then demonstrate that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). In determining whether to certify a class, the Court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). In this case, each of the prerequisites is met.

### A. Numerosity Is Satisfied

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *see also Fabricant*, 202 F.R.D. at 313 (finding that Rule 23(a) requires that joinder be impracticable, not impossible). To satisfy this

requirement, there is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable." *Id.* (*citing Kilgo v. Bowman Transp. Inc.*, 789 F.2d 711, 718 (11th Cir. 1984)). Generally, the numerosity requirement is not met with numbers less than 21, but is satisfied when the class comprises 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, BBI has admitted that the putative class includes approximately 39,750 cellular telephone numbers to which BBI sent the Contested Text Messages. Accordingly, the proposed class satisfies the requirement that it be so numerous as to make joinder of their claims impracticable.

### B. Commonality is Satisfied

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied when there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant*, 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) (finding that the commonality requirement is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members").

As alleged in this case, all class members share the common issue of whether they received unauthorized text messages from BBI in excess of the 3-5 authorized messages in a given week. In addition, proving a TCPA violation would require the resolution of whether the equipment used to send the allegedly offending messages was an "automated telephone dialing system" ("ATDS"). *See* 42 U.S.C. § 227(b)(1)(A). These common factual issues among class members results in common legal questions such as: (1) whether BBI violated the TCPA by the sending of such messages; (2) whether BBI has breached its terms and conditions of use through

such conduct; and (3) whether BBI's conduct was willful, and subjected it to additional statutory damages under the TCPA. Therefore, this element is satisfied.

### C. Plaintiff's Claims Are Typical of the Claims of the Class

Rule 23 next requires that class representatives have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted). Wojcik's claims are typical of the claims of the class because they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.,* 390 F.3d 695, 714 (11th Cir. 2004) (finding that "[n]either the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.") In fact, "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Cooper*, 390 F.3d at 714 (finding that named representative need only share the same "essential characteristics" of the larger class). Simply put, when the same unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

In this case, Wojcik and the proposed class members received one or more text messages in excess of the authorized 3-5 messages per week. As a result of this conduct, Wojcik and the proposed class are entitled to nearly identical statutory damages under the TCPA. Accordingly, the Plaintiff's claims are typical of those of the other members of the class.

**D. Adequate Representation is Satisfied**

Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates both that: (1) the class representative possess no interests antagonistic to the settlement class, and (2) class counsel is competent. *Fabricant*, 202 F.R.D. at 314-15 (*citing Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

In this case, Wojcik has interests that are the same as those of the other class members. Therefore, Plaintiff has no interests antagonistic to the interests of the proposed class. Further, proposed Class Counsel have regularly engaged in major complex litigation, have had extensive experience in consumer class action lawsuits involving cellular telephone technology and text message advertising that are similar in size, scope and complexity to the present case. **[DE 55 at 17]** Therefore, Plaintiff and his counsel will fairly and adequately represent the class.

**E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

Once the subsection (a) prerequisites are satisfied, the Federal Rules of Civil Procedure further require that one of the three requirements of Rule 23(b) be satisfied. Rule 23(b)(3) provides that a class action can be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700.

11

In this case, and in the context of the proposed settlement, common issues of fact and law predominate. BBI's alleged practice of sending text messages to subscribers is common to each class member's claims and resultant damages. The overarching factual question in the litigation would likely be whether any subscribers enrolled to BBI's text alert service received more than the five messages per week during any time that BBI's terms and conditions limited such messages to a maximum of five per week.  Regardless how the Court would rule on this issue, it's the same for every class member.

Additionally, the quantum of statutory damages is identical; the only real distinction among class members is the number of unauthorized text messages they received. Such variations do not, however, defeat class certification, because the exact amount of damages is invariably an individual question. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).

In addition, the instant class action is superior to any other method available to fairly and efficiently adjudicate the class members' claims. "The inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (*quoting Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1359 (11th Cir. 2002)). Class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 700 (S.D. Fla. 2004) (internal citations omitted); *Amchem,* 521 U.S. at 615 (stating that the "very core of the class action mechanism is to overcome the problem that small recoveries do not provide an incentive for any individual to bring a solo action prosecuting his or her rights").

Here, absent a class action, most members of the class would find the cost of litigating their claims to be prohibitive, and such multiple individual actions would be judicially

inefficient. Also, because this action has been settled, the Court need not concern itself with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).

In addition, the Supreme Court has recognized that class actions under the TCPA are appropriate. *Shady Grove Orthopedic Associates, P.A., v. Allstate Insurance Company*, 130 S. Ct. 1431 (2010). In *Shady Grove*, the Court considered whether a New York state law prohibiting class actions seeking penalties or statutory minimum damages precludes a federal court from considering Rule 23 class action status. The Court held that a plaintiff may pursue a class action claim seeking such statutory damages.

The portion of Justice Scalia's opinion joined by three other justices found it "obvious" that plaintiffs may aggregate multiple claims for statutory damages in a class action. *Id.* at 1443. Such Rules "neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed." *Id.* Thus, in responding to the defendant's argument that aggregation of statutory penalties improperly transforms a dispute over $500 into a suit for $5 million, Justice Scalia noted:

> [A]ggregate liability, however, does not depend on whether the suit proceeds as a class action. Each of the 1,000-plus members of the putative class could (as [the defendant] acknowledges) bring a freestanding suit asserting his individual claim. It is undoubtedly true that some plaintiffs who would not bring individual suits for the relatively small sums involved will choose to join a class action. That has no bearing, however, on [the defendant's] or the plaintiffs' legal rights. The likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of "incidental effec[t]" we have long held does not violate § 2072(b).

*Id.*   Justice Stevens' concurrence provides a fifth vote[3] for this holding.  *Id.* at 1459 n. 18.

Therefore, because common questions predominate, maintenance of this action as a class action

is appropriate.

### V. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must

fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making

this determination, the Court must consider counsel's: (1) work in identifying or investigating

potential claims; (2) experience in handling class actions or other complex litigation, and the

types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources

committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above,

proposed Class Counsel have extensive experience in prosecuting class actions and other

complex litigation of a similar nature, scope, and complexity. **[DE 55-11, 55-12]** Proposed Class

Counsel have intimate knowledge of the law in this field and have been involved in several high

profile consumer class actions involving cellular telephone technology and the application of the

TCPA to text message advertising. Further, proposed class counsel have diligently investigated,

dedicated substantial resources to the investigation of, and prosecuted the claims at issue in the

---

[3]  Responding to Justice Ginsburg's argument that class certification would "transform a $500 case into a $5,000,000 award," Justice Stevens notes:

[C]lass certification would transform 10,000 $500 cases into one $5,000,000 case.  It may be that without class certification, not all of the potential plaintiffs would bring their cases.  But that is true of any procedural vehicle; without a lower filing fee, a conveniently located courthouse, easy-to-use federal procedural rules, or many other features of the federal courts, many plaintiffs would not sue.

*Id.* at 1459  n. 18.

action, and has successfully negotiated the settlement of this matter to the benefit of the class. Accordingly, the Court should appoint Plaintiff's counsel to serve as class counsel for the proposed class pursuant to Rule 23(g).

## VI. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court." The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* David F. Herr, *Annotated Manual for Complex Litigation,* § 21.632 (4th ed. 2004). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig*., 516 F.3d 1095, 1110 (9th Cir. 2008); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 ("[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd,* 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993). Although this Court certainly has discretion in deciding whether to approve a proposed settlement, proper deference should be given to the consensual decision of the Parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation"). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring*, 737 F. Supp. 982, 986 (11th Cir. 1984); *Access Now,* 2002 WL 1162422 at *4. When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In determining whether the proposed settlement is "fair, adequate, and reasonable," the following factors are often considered:

(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring*, 737 F. Supp. at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 1329. Finally, in considering the preliminary approval issue, courts need not "reach any ultimate conclusions on the issues of fact and law underlying the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

Here, the proposed settlement is fair, adequate, and reasonable and should be viewed as well "within the range of possible approval." This is demonstrated by the amount of monetary relief made available to the class, the prospective relief secured for the class, and the fact that the agreement was the result of hard fought arms' length negotiations by experienced counsel that was conducted by an experienced mediator who was appointed by this Court.

The monetary relief secured on behalf of the class is substantial. Each of the class members will receive a fully transferrable debit card, valued between $57.50 and $75.00 redeemable for merchandise at www.shopthebills.com, BBI's online retail store, or in person at the official BBI team store located on the grounds of Ralph Wilson Stadium. [***Appendix 1*, p. 13 ¶2.1(b)**] The fact that the putative class consists of BBI fans supports a finding that this settlement is "fair, adequate and reasonable."

The non monetary relief secured on behalf of the class is also meaningful. Should BBI recommence operation of a text messaging service, it has agreed to implement safeguards to ensure that it complies with any express limitations it places on the number of text messages transmitted to an individual Telephone Number.

The Parties reached the instant settlement after hard-fought litigation and negotiation, and based upon the information produced by BBI in discovery and otherwise, Plaintiff's counsel is confident in the strength of the claims alleged in the Complaint and that Plaintiffs would

ultimately prevail at trial.[4] Notwithstanding the foregoing, litigation is inherently unpredictable and the outcome of a trial is never guaranteed.[5] In the end, when the strengths of the Plaintiff's claims are weighed against the legal and factual obstacles present, and the complexity of class action practice, there should be no doubt that the proposed settlement is in the best interest of class members.[6]And, given the strength of this settlement, the Parties expect no significant opposition to the settlement by any class members.

Finally, the present suit has been pending since October 25, 2012 and discovery has been extensive. As a result, Class Counsel and BBI's counsel had ample foundation upon which to evaluate the proposed settlement.[7] Each party, therefore, had the necessary information to evaluate the strengths and weaknesses of their cases in order to discuss settlement effectively.[8] Armed with this information, the Parties were able to reach the present settlement only after motion practice, discovery, extensive settlement discussions, and negotiations over settlement terms and language.[9] In its totality, this settlement is well within the range of approval and should be preliminarily approved by this Court.

---

[4] *See* Declaration of Scott D. Owens, ¶ 22; Declaration of Keith J. Keogh, ¶ 20; Declaration of James Giardina, ¶ 25.

[5] *See* Declaration of Scott D. Owens, ¶ 25; Declaration of Keith J. Keogh, 21; Declaration of James Giardina, ¶ 23.

[6] *See* Declarations of Scott D. Owens, Keith J. Keogh, and James Giardina, generally.

[7] *See* Declaration of Scott D. Owens, ¶ 20; Declaration of Keith J. Keogh, 18; Declaration of James Giardina, ¶ 21.

[8] *See* Declaration of Scott D. Owens, ¶ 20; Declaration of Keith J. Keogh, ¶ 18.

[9] See Declaration of Scott D. Owens, ¶ 21; Declaration of Keith J. Keogh, ¶ 19.

## VII. THE NOTICES SHOULD BE APPROVED IN FORM AND SUBSTANCE

The proposed Stipulation includes an exhaustive notice plan designed to directly reach each member of the class as is practicable. First, The Settlement Administrator, within thirty (30) days after the entry of the Preliminary Approval Order, shall cause Notice (Exhibit B) and a Claim form (Exhibit C) to be sent via regular mail to class members identified by using a reverse look-up service to identify, to the extent possible, the contact information for each unique Telephone Number registered with the Text Service.

Second, the Settlement Administrator will erect a settlement website that will serve as supplement for a typical notice and will provide links to the Settlement Agreement and provide for the on-line submission of claims. Third, the Defendants will serve notice upon the Attorneys General of each of the fifty United States, the Attorney General of the United States, and other required government officials, notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten (10) days after the proposed settlement is filed. *See* Exhibit D.

The proposed Notices provide settlement class members with a detailed explanation of their options to allow each of them to make an informed decision. The Parties request that the Court approve the form and methods of notice proposed.

## VIII. DEFENDANT AGREES WITH THE RELIEF REQUESTED

BBI affirmatively agrees with and supports the relief requested by Plaintiff in this motion.

## IX. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court (1) certify the requested settlement class, (2) appoint Jerry Wojcik class representative, (3) appoint Class Counsel as set forth above, (4) preliminarily approve the proposed settlement, (5) approve the

form and methods of proposed Notice, and (6) award such other and further relief as is equitable
and just.

Dated this 15th day of January 2014.                    Respectfully Submitted,

*Scott D. Owens*                                        *Jeffrey F. Reina*
*One of Plaintiff's Attorneys*                          *One of Defendant's Attorneys*

James Salvatore Giardina                                Janelle Alicia Weber
The Consumer Rights Group, LLC                          Shutts & Bowen, LLP
3104 W. Waters Ave., Ste. 200                           4301 W. Boy Scout Blvd., Ste. 300
Tampa, FL 33614                                         Tampa, FL 33607
Tel: 813-413-5610                                       Tel: 813-229-8901
Fax: 866-535-7199                                       Fax: 813-229-8901
james@consumerrightslawgroup.com                        jweber@shutts.com

Keith J. Keogh                                          Jeffrey F. Reina
Keogh Law, LTD                                          Lipsitz Green Scrime Cambria LLP
101 N. Wacker Drive, Suite 605                          42 Delaware Ave., Suite 120
Chicago, IL 60606                                       Buffalo, NY 14202
Tel: 312-726-1093                                       Tel: 716-849-1333
Fax: 312-726-1093                                       Fax: 716-849-1315
keith@keoghlaw.com                                      jreina@lglaw.com

Scott D. Owens, Esq.
Scott D. Owens, PA                                      Attorneys for the Defendant
664 E. Hallandale Beach Blvd
Hallandale, FL 33009
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Attorneys for the Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that January 15, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this January 15, 2014, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/ Scott Owens*
**Scott D. Owens, Esq.**