# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

———————————————————————

JERRY WOJCIK, an individual, on behalf of
himself and all others similarly situated,

      Plaintiff,

v.                                                                              Case No. 8:12-cv-02414-SDM-TBM

BUFFALO BILLS, INC.,
a New York corporation,

      Defendant.

———————————————————————

**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT ......................... 3

III.    SETTLEMENT TERMS ................................................................................. 4
        A.    The Non-Monetary Relief Provided by the Settlement ......................................... 4
        B.    The Monetary Relief Provided by the Settlement.................................................. 5
        C.    Payment of Class Notice, Claims Administration, and Attorneys' Fees ............... 6

IV.     CLASS MEMBERS HAVE BEEN PROVIDED ADEQUATE NOTICE OF THE
        ACTION AND THE SETTLEMENT. .............................................................. 7

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS
        IT MERITS FINAL APPROVAL ..................................................................... 9
        A.    The Settlement Agreement Is the Result of Arm's Length Negotiation
              between the Parties with the Assistance of an Experienced Mediator.................. 10
        B.    The Settlement Satisfies Each of the Eleventh Circuit's *Bennett* Factors............ 11
              1.    Likelihood of Success at Trial ................................................................. 11
              2.    Range of Possible Recovery and the Point at which the Settlement Is
                    Fair, Reasonable, and Adequate.............................................................. 13
              3.    The Complexity and Expense of Further Litigation ................................. 15
              4.    Substance and Amount of Opposition to Settlement ............................... 16
              5.    Stage of Proceedings at which Settlement Achieved ............................... 16

VI.     THE COST AND ATTORNEY FEE AMOUNT IS REASONABLE........................... 17
        1.    The Time and Labor Required, Preclusion from Other Employment and the
              Time Limits Imposed Justify the Cost and Fee Amount. .................................... 20
        2.    The Case Involved Difficult Issues; the Risk of Nonpayment and Not
              Prevailing on the Claims Was High.................................................................. 22
        3.    Class Counsel Achieved an Excellent Result for the Settlement Class................. 23
        4.    The Requested Fee is Consistent with Those Awarded in Other Similarly
              Complex Class Settlements............................................................................. 24

VII.    CONCLUSION........................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Access Now, Inc. v. Claire's Stores, Inc.*
00-cv-14017, 2002 U.S. Dist. LEXIS 28975, (S.D. Fla. May 7, 2002) .................................. 17

*Adams v. AllianceOne Receivables Mgmt.*
No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ............................................................... 14

*Allapattah Servs., Inc. v. Exxon Corp.*
No. 91-cv-0986, 2006 WL 1132371, (S.D. Fla. Apr. 7, 2006) ......................................... 16, 24

*Arthur v. Sallie Mae*
No. C10-198, 2012 U.S. Dist. LEXIS 3313 (W.D. Wash. Jan. 10, 2012) ................................ 14

*Behrens v. Wometco Enters., Inc.*
118 F.R.D. 543, (S.D. Fla. 1988) ........................................................................ 15

*Bennett v. Behring Corp.*
737 F.2d 982, (11th Cir. 1984) ......................................................................... passim

*Boeing Co. v. Van Gemert*
444 U.S. 472, (1980) .................................................................................... 17

*Camden I Condo Ass'n v. Dunkle*
946 F.2d 768, (11th Cir. 1991) .................................................................. 17, 18, 20, 24

*Chesbro v. Best Buy Stores, L.P.*
No. 10-774, 2014 U.S. Dist. LEXIS 64088 (W.D. Wash. May 7, 2014) .................................... 6

*Cohn v. Nelson*
375 F. Supp. 2d 844, (E.D. Mo. 2005) ................................................................... 18

*Domonoske v. Bank of Am., N.A.*
790 F. Supp. 2d 466, (W.D. Va. 2011) ................................................................... 16

*Faught v. Am. Home Shield Corp.*
668 F.3d 1233, (11th Cir. 2011) ...................................................................... 7, 19

*Fischel v. Equitable Life Assur. Soc'y of the United States*
307 F.3d 997, (9th Cir. 2002) ......................................................................... 21

*Francisco v. Numismatic Guar. Corp.*
No. 06-61677, 2007 U.S. Dist. LEXIS 96618 (S.D. Fla. Jan. 30, 2007) .................................. 23

*Gibson & Company Ins. Brokers, Inc. v. QFA Royalties LLC.*
No. 06-cv-05849, (C.D. Cal. Feb. 27, 2009) ............................................................. 6

*Grant v. Capital Mgmt. Servs., L.P.*
No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014) ............................. 6, 14

*Hall v. Cole*
412 U.S. 1, (1973) ..................................................................................... 24

*Hensley v. Eckerhart*
461 U.S. 424,  (1983) .................................................................................. 18

*In re CP Ships Ltd. Sec. Litig.*
578 F. 3d 1306, (11th Cir. 2009) ....................................................................... 7

*In re Domestic Air Transport. Antitrust Litig.*
148 F.R.D. 297, (N.D. Ga. 1993) ........................................................................ 9

*In re Enhanced Recovery Co.*
  13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014)................................................... 14
*In re Shell Oil Refinery*
  155 F.R.D. 552, (E.D.La.1993)................................................................................. 15
*In re Sturm, Ruger & Co., Inc.*
  No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012)................ 2
*In re U.S. Oil & Gas Litig.*
  967 F.2d 489, (11th Cir. 1992) ................................................................................. 9
*Ingram v. The Coca-Cola Co.*
  200 F.R.D. 685, (N.D. Ga. 2001)............................................................................. 11
*Jurvis v. Inamed Corp.*
  685 F.3d 1294, (11th Cir. 2012) ............................................................................... 7
*Lipuma v. Am. Express Co.*
  406 F. Supp. 2d 1298, (S.D. Fla. 2005) ........................................................... passim
*Malta v. Fed. Home Loan Mortg. Corp.*
  No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013)............... 14
*Morrison v. Nat'l Australia Bank Ltd.*
  561 U.S.247 (2010)..................................................................................................... 7
*Mullane v. Cent. Hanover Bank & Trust Co.*
  339 U.S. 306, 314 (1950)........................................................................................... 7
*Newman v. Sun Capital Corp.*
  No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) ........... 12
*Perez v. Asurion Co.*
  501 F.Supp.2d 1360, (S.D. Fla. 2007) ....................................................... 11, 15, 16
*Pinto v. Princess Cruise Lines*
  513 F.Supp.2d 1334, (S.D. Fla. 2007) ..................................................................... 21
*Sabol v. Hydroxatone LLC*
  No. 11-cv-4586, 2013 U.S. Dist. LEXIS 166520 (D. N.J. Nov. 22, 2013) ............. 22
*Saf-T-Gard v Seiko*
  09 C 776 (N.D. Ill. Jan. 14, 2011)............................................................................. 6
*Spillman v. RPM Pizza, LLC*
  No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ................... 14
*Stalcup v. Schlage Lock Co.*
  505 F.Supp.2d 704, (D. Colo. 2007)........................................................................ 22
*Steinfeld v. Discover Fin. Servs.*
  No. 12-1118, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014)................. 14
*U.S. v. Alabama*
  271 F. App'x 896, (11th Cir. 2008) ........................................................................... 7
*United States ex rel. Alderson v. Quorun Health Group*
  171 F.Supp.2d 1323, (M.D. Fla. 2001) .................................................................... 11
*Warren v. City of Tampa*
  693 F.Supp. 1051 (M.D. Fla. 1988).......................................................................... 9
*Waters v. Int'l Precious Metals Corp.*
  190 F.3d 1291, (11th Cir. 1999) .............................................................................. 21
*Yates v. Mobile Cnty. Pers. Bd.*
  719 F.2d 1530, (11th Cir. 1983) .............................................................................. 21

**Statutes**
28 U.S.C. § 1715 ................................................................................................................... 8

## I.      INTRODUCTION

Plaintiff, Jerry Wojcik, individually and as representative of the Settlement Class Members, submits this motion and memorandum in support of final approval of the class action settlement that was preliminarily approved by the Court.

Although the litigation was hard-fought and often contentious, the Parties periodically discussed the prospect of settling the case, and ultimately participated in a series of formal settlement discussions starting in April 2013 that culminated in the parties entering into a formal written Settlement Agreement (defined below). The Settlement Agreement was not concluded until after the Parties briefed defendant's dispositive motion, briefed plaintiff's class certification motion, had their experts prepare declarations for their respective positions, and completed substantial discovery, including the depositions of plaintiff and a corporate representative of BBI, as well as third-party discovery. A true and accurate copy of the Parties' Class Action Settlement Agreement [DE 72-1] (the "Settlement Agreement") is filed with this brief as *Appendix 1*.

The parties' Settlement Agreement resolves allegations that defendant, Buffalo Bills, Inc. (BBI), sent excessive text messages to the cell phones of plaintiff and the class members in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* (the "TCPA"). Plaintiff alleged that when consumers signed up to receive text messages from BBI, there was a limit to how many texts BBI was allowed to send each week. BBI denies these allegations and claims the text messages were only sent to subscribers who elected to receive such messages. Nevertheless, BBI does not oppose the relief requested in this motion and it consents to an order granting final approval to the class action settlement and the Settlement Agreement.

On April 17, 2014, the Court granted preliminary approval of the Settlement Agreement (hereinafter sometimes also referred to as the "Settlement"). [DE 73]. On June 12, 2014, the Court

granted the Parties' joint motion to permit additional notice, amending the order granting preliminary approval. [DE 75].

As shown below, the Settlement easily meets the standards for final approval. In granting preliminary approval, the Court found subject to final approval that "the Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Settlement Class." [DE 73, ¶1]. Nothing has changed to alter that conclusion. As the Court previously noted, the Settlement Agreement is the product of arm's length negotiations between defendant and experienced class counsel, and was reached with the assistance of Peter J. Grilli, who was appointed by the Court and is regarded as a skilled mediator. [DE 73, ¶1]. As a result, the Settlement is presumptively fair, reasonable and adequate. *In re Sturm, Ruger & Co., Inc.*, No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 at *12 (D. Conn. Aug. 20, 2012) ("the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.")

This presumption is bolstered by the Settlement Agreement's terms. The non-monetary and monetary relief secured on behalf of the class are significant.

The class appears to agree. Only two people submitted objections, and neither challenges the sufficiency of any of the Settlement Agreement's terms. Instead, they only take issue with the merits of the underlying claim. The objections are filed with this brief as *Appendix 2*.

Perhaps more importantly, the claim rate, *i.e.* the percentage of class members who submitted a claim) was exceptional. Typically, the claim rate in a TCPA class action is around 5%. Declaration of Keith Keogh, filed with this brief as *Appendix 3*, at ¶35. Here the claim rate relative to class members who were mailed notice was nearly 10%. Keogh Decl., ¶35. For these reasons,

which are discussed in greater detail below, plaintiff asks this Court grant the Settlement Agreement final approval.

## II.        SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

As alleged in the Complaint, the gravamen of this case is that BBI offered a text alert service whereby subscribers could receive "up to the minute news and team alerts" sent directly to their cellular telephones. The service included terms and conditions purporting to limit the messages that would be sent to a subscriber in a given week to between 3 and 5, for a period of 12 months. The Complaint alleges BBI exceeded this limit by routinely sending more than 5 messages per week, in violation of the TCPA. The Settlement Agreement resolves the claims of class members who received more than 5 text messages from BBI's text alert service in a given week.

The litigation was hard fought. BBI promptly moved to dismiss plaintiff's claims and for summary judgment. [DE 6]. After briefing that combined motion and filing the case management report, the Parties were ordered to mediation, which began on April 10, 2013. [DE 22].

Discovery ensued on or about December 21, 2012, which necessitated plaintiff filing a motion to compel discovery [DE 23], defendant filing a memorandum in opposition to the same [DE 29], and the Parties jointly filing a motion for protective order. [DE 26]. The Parties' ongoing discovery disputes required a hearing before Magistrate Judge Thomas B. McCoun III on April 5, 2013. [DE 35]. Subsequent attempts to depose a third-party witness, Charley Cassell, were met with strenuous opposition. [DE 40]. Depositions were ultimately conducted after resolution of a Motion to Quash filed in the Northern District of Illinois.

Plaintiff moved for class certification on June 17, 2013. [DE 53], and both sides submitted declarations of experts to support their respective positions. Even after the Parties announced a tentative settlement, BBI again moved for summary judgment. [DE 64]. BBI has denied and

3

continues to deny any wrongdoing whatsoever and has denied and continues to deny that it committed, threatened, or attempted to commit, any wrongful act or violation of law or duty as alleged in the Action, under the TCPA or otherwise.

The Parties were ordered to confer once again with the mediator, who was directed to file a report by November 4, 2013. [DE 65]. Although the parties eventually reached an agreement on most settlement terms, the parties were set to present the issue of costs and attorney fees to the Court as documented in the Mediation Report filed on November 4, 2013. [DE 66]. Subsequently, after further mediation, the parties agreed to accept the mediator's recommendation of the appropriate amount of costs and attorney fees to be awarded (subject to court approval). [DE 68].

On April 17, 2014, the Court granted preliminary approval of the Parties' Settlement Agreement, certified the Settlement Class, approved the Parties' proposed plan to give notice of the settlement to the class, and set deadlines for class members to object to or opt out of the Settlement. [DE 73]. On June 12, 2014, the Court granted the parties' joint motion to send additional notice to class members. [DE 75].

## III.   SETTLEMENT TERMS

The agreed-upon Settlement Class that the Court certified is defined as follows:

Persons in the United States and its territories who, from September 12, 2008 until January 15, 2014, subscribed to the Text Service by texting the word "BILLS" from their cellular telephone to SMS short code 64621 in order to receive SMS text message alerts from the defendant and who received text messages from the defendant within a weekly period (a period of seven days measured from 12:00:01 a.m. Sunday to 11:59:59 p.m. Saturday) during which the number of text messages sent by the defendant as part of the Text Service exceeded five text messages in that week. [DE 73, ¶3]

### A.   The Non-Monetary Relief Provided by the Settlement

Under the Settlement Agreement's terms, BBI agreed to impose a safeguard as to future text messaging, to prevent cases like this one from arising again. Specifically BBI agreed that, to

the extent that it continues to operate the Text Service, it shall ensure that it complies with any express limitations placed on the number of text messages to be transmitted to an individual Telephone Number. The Non-Monetary Relief terms of the Settlement Agreement provide assurance that BBI will comply with the terms of its agreement with consumers going forward.

### B.  The Monetary Relief Provided by the Settlement

In addition to the non-monetary relief, the Settlement Agreement provides a potential monetary Settlement Benefit of $2,487,745.00. [DE 72-1, §1.38]. Each Settlement Class Member who properly and timely submitted a claim form for an approved claim shall receive a fully-transferrable BBI Debit Card for purchases of merchandise at (i) Defendant BBI's online retail store at www.shopthebills.com and (ii) in person at the official Buffalo Bills team store located on the grounds of Ralph Wilson Stadium, home of the Buffalo Bills. [DE 72-1, §2.1.a].

The amount of the Debit Card corresponds with the number of "Overages", or weeks in which BBI sent more than five (5) text messages to a Settlement Class Member. [DE 72-1, §1.27]. Settlement Class Members who received one (1) to fifteen (15) Overages are categorized as Tier 1 Class Members. [DE 72-1, §1.43]. For each Approved Claim of a Settlement Class Member in Tier 1, a BBI Debit Card will be issued for $57.50. [DE 72-1, §2.1.b.i].

Settlement Class Members who received sixteen (16) to thirty-three (33) Overages are categorized as Tier 2 Class Members. [DE 72-1, §1.44]. For each Approved Claim in Tier 2, a BBI Debit Card will be issued for $65.00. [DE 72-1, §2.1.b.ii].

Settlement Class Members who received thirty-four (34) or more Overages are categorized as Tier 3 Class Members. [DE 72-1, §1.45]. For each Approved Claim in Tier 3, a BBI Debit Card will be issued for $75.00. [DE 72-1, §2.1.b.iii].

Settlement Class Members who received thirty-four (34) or more Overages are categorized as Tier 3 Class Members. [DE 72-1, §1.45]. For each Approved Claim in Tier 3, a BBI Debit Card

will be issued for $75.00. [DE 72-1, §2.1.b.iii].

Additionally, plaintiff Wojcik shall receive an incentive payment for his work representing the class in the amount of $5,000, in addition to any recovery he is entitled to as a Settlement Class Member. [DE 72, p. 7; and see Declaration of Scott Owens, filed with this brief as *Appendix 4*, at ¶24]. This is well within the range of incentive awards allowed in other TCPA class action cases. *See*, *e.g.*, *Gibson & Company Ins. Brokers, Inc. v. QFA Royalties LLC.*, No. 06-cv-05849, DE 212 (C.D. Cal. Feb. 27, 2009) ($15,000 incentive award); *Saf-T-Gard v Seiko,* 09 C 776 (N.D. Ill. Jan. 14, 2011) ($12,000 incentive award); *Chesbro v. Best Buy Stores, L.P.*, No. 10-774, 2014 U.S. Dist. LEXIS 64088 at *11 (W.D. Wash. May 7, 2014) ($5,000 incentive award); *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *21 (S.D. Cal. Mar. 5, 2014) ($5,000 incentive award) (collecting cases).

## C. Payment of Class Notice, Claims Administration, and Attorneys' Fees

The monetary relief to the class will not be reduced by the cost of administering the settlement or the payment of costs and attorney fees to class counsel. BBI agreed to separately pay the cost of the class notice and claims administration, as well as $562,500.00 for the costs and attorney fees incurred prosecuting this lawsuit. [DE 72, p. 7]. As noted above, the cost and attorney fee amount was the mediator's recommendation. Moreover, the parties' agreement on that term was only reached after they reached agreement on the relief for the class. [DE 66; 68]. The reasonableness of the cost and fee amount is further demonstrated in Section VI, below.

## IV.    CLASS MEMBERS HAVE BEEN PROVIDED ADEQUATE NOTICE OF THE ACTION AND THE SETTLEMENT.

Federal Rule 23 requires a court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Finally, the Due Process Clause also guarantees unnamed class members the right to notice of a class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

To satisfy these requirements, notice of a class settlement must "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *See Alabama*, 271 F. App'x at 901; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F. 3d 1306, 1314 (11th Cir. 2009) *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"), *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Neither Rule 23 nor Due Process require all class members to receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). In determining the sufficiency of the class notice, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, *quoting Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007). Moreover, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted).

The notice plan approved by the Court provided the best notice practicable. First, The Settlement Administrator caused Notice and a Claim form to be sent via regular mail to class members identified by using a reverse look-up service to determine, to the extent possible, the contact information for each unique Telephone Number registered with the Text Service.

Second, the Settlement Administrator contemporaneously erected a settlement website that served as supplement for conventional notice, provided links to the Settlement Agreement and enabled class members to make on-line submissions of their claims.

Third, defendant had the Settlement Administrator serve the Attorneys General of each of the fifty United States, the Attorney General of the United States, and other required government officials, with notice of the Settlement, pursuant to 28 U.S.C. § 1715.

The Notices gave class members a detailed explanation of the Settlement, including the relief, the release and amounts of the incentive award and the costs and attorney fees to be requested, to enable them to evaluate their options and make an informed decision.

In approving the Notice Plan, the Court found it "[met] the requirements of law, including Rule 23, Federal Rules of Civil Procedure, and the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715." [DE 73, ¶1]. The Court also found the Notice "is valid and sufficient and comports with Due Process. The Notice is reasonably calculated in the circumstance to apprise the Settlement Class of the pendency of this action, of the terms of the Settlement Agreement, and of the Settlement Class members' right to object to the settlement and to exclude themselves from the Settlement Class." [DE 73, ¶5]. These conclusions remain correct.

The Settlement Administrator followed the Court-approved Notice Plan. Pursuant to the Court's orders, direct individual notice of the Settlement was mailed to 15,953 class members on May 30, 2014, and an additional 9,952 class members on June 17, 2014. Declaration of Julie

Swanson, filed with this brief as *Appendix 5*, at ¶4-¶7. On May 30, 2014, notice was also published

on the Settlement Website for this case. *Id.*, ¶10. Class Members mailed the initial notice had until

July 18, 2014, to submit a claim form, opt out or object. [DE 73, ¶8]. Class Members mailed the

second notice had until August 1, 2014 to submit a claim form, opt out or object. [DE 75]. In short,

not only did the notice provided to the class comply with the court-approved plan, Rule 23 and Due

Process, but it was also successful.

### V.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS IT MERITS FINAL APPROVAL

Judicial and public policy favor the voluntary settlement of complex class action litigation. *In

re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial

settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp. 1051, 1054 (M.D. Fla.

1988) ("settlements are highly favored in the law."), *aff'd,* 893 F.2d 347 (11th Cir. 1989). With a

settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at

some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297,

306 (N.D. Ga. 1993).

Although approval of a settlement is a matter within the Court's discretion, some deference

should be given to the consensual decision of the Parties. *See Warren*, 693 F.Supp. at 1054 ("affording

great weight to the recommendations of counsel for both parties, given their considerable experience

in this type of litigation.") Ultimately, the Court should approve a class action settlement if it is fair,

adequate, and reasonable, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982,

986 (11th Cir. 1984). When conducting this analysis, the Court "should always review the proposed

settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176

F.Supp.2d 1323, 1329 (S.D. Fla. 2001).

In determining whether a proposed settlement is "fair, adequate, and reasonable," the following factors are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. In addition, the Court makes an inquiry into "whether the settlement was procured by collusion among the parties or was the result of arm's length and informed bargaining." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1329 ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.")

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). Here, the Settlement Agreement easily passes both tests, having been the product of arm's length, informed negotiations between the Parties with the assistance of a neutral mediator, and satisfying each of the Eleventh Circuit's *Bennett* factors.

### A.   The Settlement Agreement Is the Result of Arm's Length Negotiation between the Parties with the Assistance of an Experienced Mediator.

The context in which the Settlement Agreement was reached confirms that it was the result of arm's length and informed negotiations among the parties, and not collusion.

To start, the Settlement Agreement only came about after more than a year of hard-fought litigation. To reach that point, the Parties conducted an in-person mediation session and numerous telephonic sessions facilitated by a highly-experienced and well-respected neutral, Peter J. Grilli,

Esq., whose efforts were previously described by the court as "patient yet resolute …. once again [having] resolved a daunting dispute, notwithstanding the prohibitive odds against a successful mediation." *United States ex rel. Alderson v. Quorun Health Group*, 171 F.Supp.2d 1323, 1337, fn. 41 (M.D. Fla. 2001); *see Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also Checking Account Overdraft Litig.*, 275 F.R.D. at 662 (finding no collusion where settlement was reached with capable and experienced counsel and with the assistance of a well-qualified and experienced mediator). Moreover, the Parties reached the Settlement through experienced counsel, who had at their disposal ample information about the case facts to evaluate the terms of any proposed agreement, so as to reach a fair compromise. *See* Keogh Decl., ¶35.

As such, it is clear the Settlement Agreement is the result of arm's length and informed negotiation between the Parties, not collusion, and thus the Court should not hesitate to approve it.

## B.     The Settlement Satisfies Each of the Eleventh Circuit's *Bennett* Factors.

In addition to being the result of arm's length negotiations, the Settlement also satisfies each of the *Bennett* factors.  While the Eleventh Circuit instructs district courts to consider the *Bennett* factors, "[i]n evaluating these considerations, the district court should not try the case on the merits."  *Perez v. Asurion Co.*, 501 F.Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id*. Here, as explained below, each of the *Bennett* factors weighs in favor of approving the Settlement Agreement.

### 1.     Likelihood of Success at Trial

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. "The likelihood of success on the merits is

weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F.Supp.2d at 1319. Where success at trial is not certain for plaintiff, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Here, plaintiff's and the class members' ultimate success at trial is far from guaranteed. BBI had moved to dismiss the Complaint arguing that (1) plaintiff gave prior express consent to receive text messages at issue from BBI and (2) plaintiff failed to sufficiently allege the use of an automatic telephone dialing system for the purposes of the TCPA. [DE 6]. Although plaintiff is confident in his claim and that he had effectively opposed BBI's motion to dismiss, it is possible that BBI could prevail on that dispositive motion.

BBI's subsequent summary judgment motion also serves to increase the risk of an adverse result for plaintiff. [DE 64]. In it, BBI similarly argued that (1) plaintiff gave prior express consent to receive the text messages when he supplied his telephone number to BBI and (2) plaintiff gave prior express consent to unlimited text messages prior to BBI's confirmatory text. [DE. 64]. Plaintiff is confident that he can defeat this motion as well, but it presents open legal issues, and there is a genuine risk that BBI could win, eliminating any recovery here.

Further, and despite his belief in the strength of his case, plaintiff recognizes the expense, duration, and complexity of protracted litigation would be substantial and possibly require further briefing on numerous substantive issues, and extensive trial preparation. Against the inherent uncertainty raised by these issues is the concrete nature of the relief afforded under the Settlement Agreement, where each Settlement Class Members to submit an Approved Claim Form will recover a BBI Debit Card with a value of at least fifty-seven dollars and fifty cents ($57.50).

12

As such, because success at trial is far from certain and the value of the Settlement is unquestionably strong, the first *Bennett* factor weighs in favor of approving the Settlement.

### 2. Range of Possible Recovery and the Point at which the Settlement Is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *In re Sunbeam*, 176 F.Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F.Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F.Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F.Supp.2d at 1326.

The monetary relief secured on behalf of the class is substantial. Each class member submitting a valid claim receives a fully-transferrable debit card, valued between fifty-seven dollars and fifty cents ($57.50) and seventy-five dollars ($75.00), redeemable for merchandise at BBI's online retail store, www.shopthebills.com, or in person at the official BBI team store located on the grounds of Ralph Wilson Stadium. [DE 72-1, §2.1(b)]. Because the putative class is made up of Buffalo Bills fans who signed up for a Buffalo Bills texting service, this dimension supports a finding that this settlement is "fair, adequate and reasonable."

The Settlement Agreement's terms are also fair, reasonable, and adequate when compared to other TCPA class settlements.[1] The relief available to each Settlement Class Member here easily

---

[1] The TCPA provides a potential recovery of between five hundred dollars and, if the violation is willful, one thousand five hundred dollars, but this does not take into consideration the risk of

surpasses the potential per-class-member benefit conferred in other TCPA class settlements that have received final approval. *See In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) at DE 123, p. 1 (only injunctive relief for class) and DE 124 (settlement granted final approval); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 U.S. Dist. LEXIS 44855 at *4 and *11-*12 (N.D. Cal. Mar. 31, 2014) ($8.7 million to cover claims of over 8 million class members); *Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *10 (S.D. Cal. Mar. 5, 2014) (injunctive relief only – no monetary relief to the class); *Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) ($9,750,000 to cover claims of over 1,400,000 class members); *Arthur v. Sallie Mae*, No. C10-198, 2012 U.S. Dist. LEXIS 3313 at *10, *20 (W.D. Wash. Jan. 10, 2012) (preliminarily approving settlement of $24,150,000 for class of 8,000,000 members), final approval granted at 2012 U.S. Dist. LEXIS 132413 (W.D. Wash Sept. 17, 2012); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 at *18-*19 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million for 5,887,508 automated calls; final approval granted at DE 91); *Adams v. AllianceOne Receivables Mgmt.,* No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members, see DE 109 at 10, 116 at 6, and 137).

The non-monetary relief secured on behalf of the class is also significant. If BBI recommences operation of a text message service, it has agreed to implement safeguards to ensure that it complies with any express limitations it places on the number of text messages transmitted to an individual telephone number.

---

losing. Factoring in that risk in settlement necessitates a discounted recovery. As shown here, many courts have approved settlements providing a much lower per-class member benefit.

As such, the Settlement accommodates the unique BBI-fan Settlement Class and is in the upper range of what is fair, adequate and reasonable for a TCPA Settlement of this magnitude. Thus, the second and third *Bennett* factors weigh in favor of approval.

### 3.      The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F.Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F.Supp.2d at 1381, *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988).

This factor favors approving the Settlement because the expense and complexity of further litigation would be substantial. It would require pretrial motion practice, a final pretrial order and final pretrial conference, and conducting a trial.  If the Court were to grant class certification or grant summary judgment in Defendant's favor, then given the stakes, the losing side would likely seek relief from the Eleventh Circuit.  In either case, continued litigation would delay the case's resolution, impose additional unnecessary expense on both sides, and consume substantial additional judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F.Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.") In sum, the complexity, expense, and

duration of litigation favors the approval of this Settlement.

### 4.     Substance and Amount of Opposition to Settlement

The next *Bennett* factor is the substance and amount of opposition to the settlement.  Here, only six class members requested exclusion, and only two submitted "objections." See Objections filed with this brief as *Appendix 2.* Significantly, the objections do not criticize the Settlement itself. Instead, they convey their authors' view that they were not upset at receiving more text messages than they allegedly gave consent to receive. *Id*. In other words, they express general disapproval of the lawsuit. These types of "philosophical" objections are inevitable in class actions, and thus "do not impugn the adequacy of the settlement itself." *Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 474 (W.D.Va. 2011).

In any event, the fact that there are only two objections, despite the comprehensive notice provided to the class, demonstrates that class members find the agreement reasonable and fair, which strongly favors the settlement.  *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.") Once again, the class claim rate here was about double the norm. Thus, the absence of formal objections, compared to the number of claims submitted, further points toward granting final approval.

### 5.     Stage of Proceedings at which Settlement Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further

litigation." *Perez*, 501 F.Supp.2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 at *21 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F.Supp.2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof.  This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.")

Here, the Settlement Agreement was not reached until after substantial discovery, including experts, full briefing on BBI's motion to dismiss, full briefing plaintiff's motion for class certification, and the filing of BBI's motion for summary judgment. Class counsel ensured they had sufficient information about the Text Service and BBI's policies, the size of the Settlement Class, and the range of the Class's potential damages. Hence, there should be no question that, by the time the Settlement was reached, class counsel had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of Settlement against continued litigation.  The stage of proceedings factor thus weighs in favor of approval as well.

## VI.    THE COST AND ATTORNEY FEE AMOUNT IS REASONABLE

When permitted by the parties' agreement or law, Federal Rule 23 provides for an award of costs and attorney fees to class counsel who prosecute the case and obtain the settlement for the class. Fed. R. Civ. P. 23(h). Both the Settlement Agreement and the law provide for an award of attorneys' fees here because "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d at 1358, *citing Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444

U.S. 472, 478 (1980).

Like the agreement on the relief to be provided to the class, the parties' subsequent agreement on the cost and attorney fee award stems from a mediation with Mr. Grilli, the court-appointed mediator. In fact, the proposed cost and fee amount is the figure that Mr. Grilli recommended. Moreover, while it is within the Court's discretion to determine the reasonableness of the proposed award, negotiated cost and attorney fee awards in class action settlements are strongly encouraged. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of the fee."); *accord Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) ("where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.")

The mediator proposed, and the parties agreed, that a reasonable sum for costs and attorney fees is $562,500.00. The reasonableness of this figure is confirmed by examining it both as a percentage of the total Settlement, as well as the various factors established for evaluating attorney fee requests (including the "Johnson" factors). *Camden I Condo. Ass'n*, 946 F.2d at 774-775 (the attorney fee award should be determined on a percentage basis, but the *Johnson* factors "continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards.")

**A.  The Cost and Fee Amount Is Reasonable as a Percentage of the Total Settlement.**

"The majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I Condo. Ass'n*, 946 F.2d at 774. Courts regards this range as the "bench mark" range of reasonableness. *See Id.* at 775.[2]

---

[2] The benchmark, however, is only that. The award may exceed it. *Camden I Condo. Ass'n*, 946 F.2d at 774-775 (as a general rule, "an upper limit is 50%").

The mediated cost and fee award here easily satisfies that criteria. The Settlement Agreement contemplates a potential monetary Settlement Benefit of $2,487,745 being paid in the form of BBI Debit Cards to eligible class members. The $562,500.00 BBI agreed to pay to cover costs and attorney fee is only 22.6% of that figure. This alone establishes its reasonableness. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) ("25% is generally recognized as a reasonable fee award in common fund cases.")

In fact, the actual percentage is even lower. In a typical case, the costs and fees are paid from the class members' recovery. Here, however, BBI is paying them in addition to the benefits being made available for the class. Moreover, the total settlement also includes the money BBI must pay for the cost of issuing notice to the class and administrating the settlement ($86,164.15, through June 2014). See Swanson Decl., ¶18. As a percentage of the sum of these amounts ($3,136,409.15), the agreed cost and fee amount is actually only 17.9% of the total settlement.

On top of that, this percentage does not account for the non-monetary benefit of the Settlement. Again, the Settlement Agreement requires BBI to establish safeguards to ensure that it complies with limits on the number of text messages sent to individual telephone numbers in the future. Although this benefit's value is hard to quantify in dollar terms, its presence further enhances the reasonableness of the cost and fee amount. *See Faught*, 668 F.3d at 1244-45 (cost and fee award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class.") In short, the mediated cost and fee amount is a reasonable on a percentage basis, and should be approved.

**B. The Cost and Fee Amount Is Also Reasonable under the *Johnson* Factors.**

Although not required unless the proposed cost and fee award exceeds 25% of the total settlement (*Faught*, 668 F.3d at 1242), the Eleventh Circuit also endorses using the factors

articulated *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of a proposed cost and fee award. *See Camden I Condo. Ass'n*, 946 F.2d at 775.

The "*Johnson* factors" are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772. These factors further establish the reasonableness of the cost and fee amount here.

**1.  The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.**

The first, fourth, and seventh *Johnson* factors—the time and labor, preclusion of other employment, and time limitations imposed, respectively—are interrelated inquires and each support the reasonableness of the cost and fee request.  Class counsel had to engage in substantial litigation against a well-heeled defendant and sophisticated defense counsel to reach the Settlement. The work class counsel had to perform to achieve the Settlement includes, but is not limited to:

- An extensive pre-suit investigation of plaintiff's and the class members' claims;
- Drafting the complaint [DE 1];
- Briefing defendant's extensive combined motion to dismiss and for summary judgment [DE 12];
- Briefing plaintiff's motion to compel discovery [DE 23];
- Briefing plaintiff's motion for class certification [DE 53, 54];
- Briefing defendant's motion to quash a subpoena [DE 30], which was then argued in the Northern District of Illinois;
- Preparing for and taking of depositions of BBI's corporate representative;
- Preparing for and defending plaintiff's deposition;
- Preparing for and taking the deposition of a non-party witness;
- Working with an expert to prepare his declaration in support of plaintiff's and the class members' claims [DE 12-2];
- Extensive arm's length settlement negotiations;
- Preparing for and conducting two mediations that culminated in a settlement

agreement offering exceptional relief [DE 66, 68].

Consistent with this volume of work and the innumerable smaller tasks needed to conduct the litigation, class counsel collectively incurred hundreds of thousands of dollars in attorney fees and $19,945.08 in out-of-pocket costs in prosecuting this case. Keogh Decl., ¶34; Owens Decl. ¶21; Giardina Decl. ¶39, filed with this brief as *Appendix 3, 4 and 6*.[3]

The work needed was so extensive, there is little left to do beyond obtaining the Court's decision on the pending substantive motions and, if they don't end the case, preparing for and conducting a trial. These efforts required over 978.9 hours of work representing plaintiff and the class without compensation. See Owens Decl., ¶20 (345.6 hours), Keogh Decl., ¶27 (362.1 hours), and Giardina Decl., ¶22 (271.2 hours). This does not include the work still to come after final approval, which will include supervising the administration of the settlement, answering class member questions and resolving any issues that arise. *See, e.g.*, Giardina Decl., ¶38.

The substantial work necessitated by this case diverted the time and resources spent on it from being put into other matters. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) ("The expenditure of 1,000 billable hours—and often in significant blocks of time— necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work,

_____

[3] The combined total costs and fees incurred to date is $434,712.58. See Owens Decl., ¶20-¶21, Keogh Decl., ¶27, ¶34, and Giardina Decl., ¶37, ¶39. Although this amount is less than the proposed cost and fee award, it is typical for the cost and fee award to be some multiple of the actual costs and fees incurred to account for risk of nonpayment. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999); *Pinto v. Princess Cruise Lines*, 513 F.Supp.2d 1334, 1344 (S.D. Fla. 2007) ("In many cases, including cases in this jurisdiction, multiples much higher than three have been approved.") (collecting cases approving multiples of between 6 and 12 times actual costs and fees). Indeed, in some instances failing to allow a multiplier is an abuse of discretion. *See, e.g.*, *Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. 2002). Here, the agreed cost and fee award is only about 1.28 times the total costs and fees incurred.

and this factor should raise the amount of the award."); *see also Stalcup v. Schlage Lock Co.*, 505 F.Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

Finally, and perhaps most tellingly, no class member raised any substantive objection to class counsel's effort or the cost and fee award proposed here.[4] Accordingly, the amount of time and labor devoted to this case supports the reasonableness of class counsel's cost and fee request.

## 2. The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.

The second, sixth, and tenth *Johnson* factors—the novelty and difficulty of the questions, whether the fee is contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested cost and fee award.

This case is novel on several levels. First, in general, most TCPA claims involving cell phones and text messaging are relatively new, and the law as applied to these circumstances is still developing. Second, the specific question presented by this case – whether a party who sends more text messages than promised to a person who otherwise consented to receive them – has never been decided by any court.

In addition, the ability to recover costs and fees in this case is and has always been contingent on a successful outcome and substantial recovery. The TCPA does not provide for an award of attorney fees to a prevailing plaintiff. The only way to recover a fee is to be paid by the hour to prosecute the case (which did not happen here), or as part of a large recovery. Counsel had

---

[4] One of the two "objections" claimed class counsel should not receive any fee, but for no reason other than that the objector did not like the lawsuit. This is not a basis for questioning the proposed cost and fee amount. *See, e.g.*, *Sabol v. Hydroxatone LLC*, No. 11-cv-4586, 2013 U.S. Dist. LEXIS 166520 at *20, fn. 5 (D. N.J. Nov. 22, 2013) (rejecting "generic" objections to the proposed cost and fee award).

to advance the costs and fees, and risked receiving nothing in return. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto*, 513 F.Supp.2d at 1339. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F.Supp.2d at 1335. Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), *citing Pinto,* 513 F.Supp.2d at 1339.

The novelty and contingent nature of the case also demonstrate the undesirability of the case. Few lawyers relish taking on a lawsuit that consumes nearly a 1,000 hours of attorney time, involves uncertain questions, and requires the lawyers to advance nearly $20,000 in out-of-pocket costs, and risk getting paid nothing.

Although class counsel were able to achieve an excellent result for the class, achieving this outcome was anything but certain when they agreed to take the case, and thus these factors all weigh in favor of approving the mediated cost and fee amount. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight"), *citing Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

### 3.   Class Counsel Achieved an Excellent Result for the Settlement Class.

The eighth *Johnson* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel. *See Allapattah Servs.,*

*Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1202 (S.D. Fla. 2006).

Here, the parties' mediated Settlement contemplates a potential monetary Settlement Benefit of $2,487,745.00 for a class of approximately 39,750 persons [DE 72, p. 9]. This factor thus weighs strongly in favor of approving the cost and fee amount. As shown above, this recovery is significant when compared to many other TCPA cases that provided for settlement funds that only represented a few dollars per class member.

While this factor typically focuses on the monetary relief, the non-monetary benefit of the Settlement, which requires BBI to impose safeguards to avoid a repeat of the situation that gave rise to this case, must also be considered. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (the right to fees "must logically extend, not only to litigation that confers a monetary benefit on others, but also litigation 'which corrects or prevents an abuse which would be prejudicial to the rights and interests' of those others.") Thus, this factor also supports the agreed cost and fee amount.

### 4. The Requested Fee is Consistent with Those Awarded in Other Similarly Complex Class Settlements.

The fifth and twelfth *Johnson* factors, the customary fee and awards in similar cases, respectively, also support a finding that the agreed-upon fee request—which amounts to less than 20% of the potential monetary Settlement Benefit of $2,487,745.00—is reasonable. As demonstrated above, this is below the 20%-30% bench mark range deemed to be presumptively reasonable in this Circuit. *See Camden I Condo. Ass'n*, 946 F.2d at 774; *see also e.g., In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1365 (30% fee is customary in class action cases); *Pinto*, 513 F.Supp.2d at 1341 ("The 30% fee requested in this case is thus well in line with the bulk of the fee awards in class action litigation"); *Allapattah*, 454 F.Supp.2d at 1202 (S.D. Fla. 2006) (awarding 31.33%). Accordingly, this factor also favors the agreed cost and attorney fee award proposed here.

24

**5.   This Case Required a High Level of Skill, and Class Counsel are Leaders in their Field.**

The remaining *Johnson* factors – the skill required to perform the legal services properly and the experience, reputation, and ability of the attorneys – confirm that the costs and fees sought are reasonable.  As shown above, class counsel achieved a settlement that confers substantial monetary and non-monetary benefits to the Settlement Class despite the hard fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.,* 176 F.Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.")

This outcome was made possible by class counsel's extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Indeed, class counsel regularly engage in complex litigation involving consumer issues, all have been lead counsel in numerous TCPA cases, Mr. Keogh regularly lectures on the TCPA, and Mr. Owens in is one of the leading TCPA practitioners in Florida. Keogh Decl., ¶9; Owens Decl., ¶13; Giardina Decl., ¶16-¶17. In short, the *Johnson* factors confirm that the cost and attorney fee award recommended by the court-appointed mediator, and agreed to by the parties, is reasonable.

**VII.    CONCLUSION**

This Settlement provides significant and immediate benefits for the class, it is the result of arm's-length, informed negotiations with the assistance of an experienced mediator, and it satisfies each of the six *Bennett* factors.  The Settlement is fair, reasonable, and adequate under Rule 23, and thus plaintiff respectfully requests that this Court enter an order granting it final approval.


Respectfully Submitted,

s/*Scott D. Owens*
One of Plaintiff's Attorneys

25

Scott D. Owens, Esq. Scott D. Owens, PA
664 E. Hallandale Beach Blvd Hallandale, FL 33009
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

James Salvatore Giardina
The Consumer Rights Group, LLC 3104 W. Waters Ave., Ste. 200
Tampa, FL 33614
Tel: 813-413-5610
Fax: 866-535-7199
james@consumerrightslawgroup.com

Keith J. Keogh
Keogh Law, Ltd.
55 W. Monroe, Ste. 3390
Chicago, IL 60603
Tel: 312-726-1093
Fax: 312-726-1093
keith@keoghlaw.com
Attorneys for Plaintiff